NOT DESIGNATED FOR PUBLICATION

No. 114,152

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ERIC P. JOECKEL,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Miami District Court; STEVEN C. MONTGOMERY, judge. Opinion filed February 26, 2016. Affirmed.

*Darrell L. Smith*, of Olathe, for appellant.

*Jason A. Oropeza*, assistant county attorney, *Elizabeth Sweeney-Reeder*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., BUSER, J., and HEBERT, S.J.

*Per Curiam*: Eric P. Joeckel appeals the district court's denial of his K.S.A. 60-1507 motion after appointment of counsel and a preliminary hearing. Joeckel contends his trial counsel was ineffective by failing to include in a motion for new trial that the defendant was denied a fair trial because two venirepersons responded to questions during voir dire that "were tantamount to endorsement" of Kacy Hays, a witness for the State. According to Joeckel, his trial attorney's ineffectiveness in this regard "was sufficiently serious to prejudice the defense and deprived [him] of a fair trial." Having

1

reviewed the record and considered the parties' briefs, we find no error and affirm the district court's judgment denying the K.S.A. 60-1507 motion.

FACTUAL AND PROCEDURAL BACKGROUND

On April, 30, 2010, a jury found Joeckel guilty of aggravated battery in violation of K.S.A. 21-3114(a)(1)(A). On direct appeal, our court upheld the conviction and sentence. See *State v. Joeckel*, No. 105,117, 2012 WL 307661, at *1, 12 (Kan. App. 2012) (unpublished opinion), *rev. denied* 296 Kan. 1133 (2013). The conviction and sentence resulted from an altercation between Joeckel and Nathan Lucas outside of a bar in Osawatomie, Kansas.

According to witnesses for the State, Joeckel pushed Lucas to the ground and, while he squatted over him, continued to punch him until someone pulled Joeckel off Lucas. Joeckel testified that he only hit the victim once, while others testified Joeckel hit the victim repeatedly. As recounted by our court in its opinion on the direct appeal:

"There were several witnesses to Joeckel and Lucas' altercation. The witnesses' testimony also differs from Joeckel's and Lucas' testimony. At trial, Kacy Hayes testified that she saw Joeckel 'walk up behind [Lucas] and punch him in the back of the head.' After the punch, Lucas fell to the ground. Once Lucas was on the ground, Hayes testified that Joeckel stood over Lucas and punched him repeatedly.

"Other witnesses corroborated Hayes testimony that Joeckel stood over Lucas and punched him repeatedly." 2012 WL 307661, at *2.

As a consequence of the attack, Lucas sustained multiple facial fractures which required surgical repair.

The State charged Joeckel with one count of aggravated battery. At trial, Joeckel testified on his own behalf and admitted to punching Lucas once, but he claimed it was in

2

self-defense. The jury found Joeckel guilty of aggravated battery. On July 22, 2010, Joeckel was sentenced to 162 months' imprisonment and 36 months' postrelease supervision.

On June 20, 2013—after his conviction and sentence were affirmed on direct appeal to our court—Joeckel filed a timely pro se K.S.A. 60-1507 motion. Almost 2 years later, on April 24, 2015, Joeckel filed an amended K.S.A. 60-1507 motion with the assistance of appointed counsel. In his amended motion, Joeckel contended that two venirepersons made responses during voir dire that amounted to an endorsement of Hayes, a State's witness. Joeckel further argued that his trial attorney's failure to raise these responses as an issue in the motion for new trial was ineffective assistance of counsel.

As he argued below and as he argues on appeal, Joeckel complains of two venireperson's statements made during voir dire regarding their relationship with Hays. The first colloquy occurred between the State and venireperson L.M.:

> "Q. [State:] Do you know Kacy Hays?
> "A. [L.M.:] She used to be an employee of mine.
> "Q. Where was that at?
> "A. Miami County Medical Center.
> "Q. What was your relationship with her, would you say it was good?
> "A. I was her boss.
> "Q. Would you say you had a good relationship?
> "A. Pretty much so.
> "Q. When she left, did she leave on good terms?
> "A. Yes.
> "Q. Have any reason to give any more or less weight to her testimony than anyone else's?
> "A. No.

"Q.      Anything about knowing her think would prevent you from being a fair and impartial juror?

"A.      No."

The second exchange occurred between the State and venireperson B.C.:

"Q.      [State:] [B.C.], I understand that Miss Hays is your granddaughter.

"A.      [B.C.:] Yeah.

"Q.      I assume you're probably going to give her a lot of weight and credibility when she testifies because she's your granddaughter; correct?

"A.      Depends on what she testifies about.

"Q.      But as a general rule, you believe her to be—

"A.      I believe her to be truthful, yes.

"Q.      And I guess our concern is, is that going to tend to make you lean one way or another if she testifies? In other words, do you think you can still be fair and impartial if she testifies?

"A.      Well, I would try to be. But like I said, I don't know what she's going to say.

"Q.      But you don't think merely the fact that she's your granddaughter is going to make you vote or render a verdict in favor of the side that she's testifying for?

"A.      Well, I'd hope it wouldn't, but I don't know."

Notably, L.M. and B.C. were not impaneled on the jury that ultimately convicted Joeckel. Upon his conviction, Joeckel's trial attorney filed a motion for new trial. This motion did not raise the issue of the responses made by the two venirepersons during voir dire.

On June 25, 2015, the district court held a preliminary hearing on Joeckel's amended K.S.A. 60-1507 motion. After hearing arguments of counsel, the district court denied Joeckel's request for relief. In denying the motion, the district judge explained:

4

"Well, the Court finds that the burden here, of course, is on Mr. Joeckel and I—I'm really finding that, although the argument is sound and also the argument is well developed, I can't find that there is a connection with this voir dire inquiry which would allow it to be constructed as the endorsement of witness Hays. The Court understands and notes that, you know, there's less than a bright line here that demarks an endorsement and simple questioning to determine whether or not a juror can be fair and impartial. I'm making a finding that, although there's a less than bright line here, that the questioning that we have here of these veniremen does not constitute an endorsement of witness Hays."

The district judge further concluded:

"I'm also going to find that Mr. Joeckel has not demonstrated that there's a reasonable prob—even if there was a deficient performance, that there's not a reasonable probability that the result of the proceeding would've been different if this had been raised on the motion for new trial. . . . I don't see that even if defense counsel's performance was deemed to [be] deficient that Mr. Joeckel has shown that there was a reasonable probability that the result would've been different. Just because that would've been raised at an argument before Judge Harth, that alone only means that she would've considered it, not that the result would've been different."

Joeckel timely appeals.

ANALYSIS

A district court has three options when reviewing a K.S.A. 60-1507 motion:

"(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the

5

motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing." *Fischer v. State*, 296 Kan. 808, 822-23, 295 P.3d 560 (2013).

In this case, the district court employed the second option in its review of Joeckel's K.S.A. 60-1507 motion. When the district court denies a K.S.A. 60-1507 motion based only on the motion, files, and records after a preliminary hearing, the appellate court is in just as good a position as the district court to consider the merits. *Grossman v. State*, 300 Kan. 1058, 1061, 337 P.3d 687 (2014). Accordingly, our standard of review is de novo. 300 Kan. at 1061.

Joeckel contends his trial counsel was ineffective by failing to include in his motion for new trial that the defendant was denied a fair trial because two venirepersons responded to questions during voir dire that "were tantamount to endorsement" of Hays. In order to evaluate this contention, it is necessary to summarize the law and standards which apply to ineffective assistance of counsel claims.

"The right to effective assistance of counsel arises from the Sixth Amendment to the United States Constitution, which guarantees in 'all criminal prosecutions' that 'the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.'" *Edgar v. State*, 294 Kan. 828, 837, 283 P.3d 152 (2012). The test district courts and appellate courts employ in Kansas to evaluate whether an attorney was ineffective under constitutional standards provides:

> "To support a claim of ineffective assistance of counsel based on counsel's performance, a defendant must demonstrate that (1) counsel's performance was deficient and (2) counsel's deficient performance was sufficiently serious to prejudice the defense and deprive the defendant of a fair trial. [Citations omitted.] . . .
> . . . .
> "'The first prong of the test for ineffective assistance of counsel requires a defendant to show that counsel's representation fell below an objective standard of

6

reasonableness, considering all the circumstances. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. [There is] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. [Citation omitted.]

"'[Under the second prong of the test for ineffective assistance of counsel], the defendant also must establish prejudice by showing that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. [Citation omitted.]'" *Edgar*, 294 Kan. at 837-38 (quoting *Bledsoe v. State*, 283 Kan. 81, 90-91, 150 P.3d 868 [2007]).

We will consider the performance and prejudice prongs separately.

With regard to the performance prong, we have two concerns about Joeckel's argument. First, we have carefully reviewed Joeckel's appellate brief. While Joeckel claims that his counsel was ineffective in not seeking a new trial due to L.M.'s and B.C.'s voir dire responses, he has not provided us with any precedent from any court wherein an attorney's conduct based on similar facts was found to be constitutionally deficient performance. Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *State v. Tague*, 296 Kan. 993, 1001, 298 P.3d 273 (2013). And an issue not briefed by the appellant is deemed waived and abandoned. *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013).

We note in passing that "the purpose of the voir dire examination is to enable the parties to select competent jurors without bias, prejudice, or partiality." *State v. Zamora*, 247 Kan. 684, 692, 803 P.2d 568 (1990). In order to accomplish this goal, it is necessary

for trial counsel to inquire of venirepersons regarding whether they harbor any bias, prejudice, or partiality towards potential trial witnesses.

Our second concern is that Joeckel is under the mistaken impression that if he was prejudiced by the venirepersons' responses, then his counsel was constitutionally ineffective *regardless* of whether his performance was deficient. This is a misreading of *Edgar* which generally provides that if a reviewing court determines that no prejudice has occurred based on an attorney's trial performance it is unnecessary for the appellate court to analyze the performance prong to determine whether the attorney was ineffective. Unfortunately, as a result of Joeckel's misreading of *Edgar*, he has not argued the performance prong of the ineffective assistance of counsel standard in his appellate brief. As a consequence, we deem the issue waived and abandoned.

With regard to the prejudice prong, we also have two concerns. First, we question the factual basis for Joeckel's claim that the two venireperson's responses regarding Hays "were tantamount to endorsement of Hays." Having reviewed L.M.'s and B.C.'s voir dire responses, we conclude they were vague, uncertain, noncommittal, and hardly a commendation of Hay's character or credibility. Accordingly, we are convinced there is substantial competent evidence to support the district court's finding that the responses did *not* "constitute an endorsement of witness Hays." As a result, we conclude that the rather ordinary and indifferent responses by these two venirepersons were not of such weight and importance as to prejudice the trial and undermine the verdict, especially since they were not members of the jury that convicted Joeckel. We are also convinced that, given the facts, the trial court would not have granted a new trial on this basis.

Second, Hays was only one of several witnesses who provided evidence incriminating Joeckel of aggravated battery. Although Joeckel argues there was conflicting evidence at trial, there was substantial evidence corroborating the testimony of Hays that Joeckel was not striking Lucas in self-defense. For example, several

8

witnesses testified they saw Joeckel standing over Lucas and punching him. Additionally, during cross-examination, Joeckel testified he never hit Lucas on the right side of the face. On the contrary, Joeckel claimed he hit Lucas on the left side of the face. Yet, the victim's treating physician in the emergency room testified that the main area of injury to Lucas was to his right cheekbone. The victim also had an injury to the back of his head. These injuries and expert testimony regarding them tended to corroborate Hays and the other testimony by the State's witnesses.

With regard to the prejudice prong and having considered the totality of the trial evidence, we are convinced there is no reasonable probability that the venireperson's responses during voir dire undermined the outcome of the trial.

In summary, we hold the district court did not err in denying Joeckel's K.S.A. 60-1507 motion after a preliminary hearing. By failing to brief the performance prong of the ineffective assistance of counsel standard, Joeckel has waived and abandoned the issue. See *Boleyn*, 297 Kan. at 633. Moreover, having considered the merits of the prejudice prong, we find Joeckel also has failed to show prejudice. There is no reasonable probability that had trial counsel raised this issue on a motion for new trial, that Joeckel would have been granted a new trial on that basis. Finally, we have full confidence that the jury's guilty verdict was not affected by the venireperson's responses to questions posed during voir dire.

Affirmed.