NOT DESIGNATED FOR PUBLICATION

No. 122,390

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

PHOUTHAVY CHANTHASENG,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JOHN E. SANDERS, judge. Opinion filed June 11, 2021.
Affirmed.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before WARNER, P.J., BUSER and CLINE, JJ.

PER CURIAM: This is an appeal by Phouthavy Chanthaseng of the district court's
order summarily denying his K.S.A. 60-1507 motion alleging ineffective assistance of
trial counsel. Chanthaseng contends the district court erred in summarily denying the
motion without affording him an evidentiary hearing. Upon our review, we find no
reversible error and, accordingly, affirm the district court's ruling.

1

In 2008, a jury convicted Chanthaseng of aggravated indecent liberties with a child in violation of K.S.A. 21-3504(a)(3)(A) and (c). The district court imposed a sentence of life imprisonment without the possibility of parole for 25 years. Chanthaseng appealed, and the Kansas Supreme Court affirmed the conviction and sentence. See *State v. Chanthaseng*, 293 Kan. 140, 261 P.3d 889 (2011).

In June 2012, Chanthaseng filed a K.S.A. 60-1507 motion alleging three claims of ineffective assistance of trial counsel and cumulative error. Four months later, Chanthaseng moved to amend the motion. The amended motion alleged eight claims of ineffective assistance of trial counsel, one claim of ineffective assistance of appellate counsel, one jurisdictional claim, and one claim of judicial misconduct. Chanthaseng asserted that these issues related back to the original motion.

The parties are aware of the lengthy procedural history involving the amended motion. On appeal, Chanthaseng candidly acknowledges, however, that "the question of trial counsel's effectiveness during the voir dire process and his failure to strike, or even question a [juror] with a history of being molested as a child, was the only issue of substance and proper for appellate review." As a result, the propriety of the district court's ruling with respect to the other issues raised throughout the K.S.A. 60-1507 proceedings but not briefed on appeal is not before this court. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) ("'An issue not briefed by an appellant is deemed waived or abandoned.'"). We will focus our analysis on trial counsel's handling of the voir dire of the juror identified as M.K.-B.

In the district court, Chanthaseng maintained an evidentiary hearing was "necessary to assess whether counsel made a strategic decision not to challenge [M.K.-B.] and for failing to remove the juror as part of defense counsel's strikes." The district

court ultimately denied Chanthaseng's request for an evidentiary hearing on the claim of ineffective assistance of counsel regarding M.K.-B. The district court held:

> "[T]he Court denies petitioner's request to grant a hearing on this issue. Though Chanthaseng asserts that a juror was biased, the transcript of the exchange between counsel and the juror during *voir dire* where the juror stated that she would have to listen to the evidence before determining guilt shows petitioner has not shown prejudice. Any examination of a juror's thought process would be prohibited and extrinsic matters would be mostly useless."

Chanthaseng appeals.

## ANALYSIS

On appeal, Chanthaseng claims he was entitled to an evidentiary hearing to address whether his trial counsel was ineffective for failing to question or challenge the prospective juror, M.K.-B.

District courts shall hold an evidentiary hearing on a K.S.A. 60-1507 motion and make findings of fact and conclusions of law with respect thereto, unless the motion, files, and records of the case conclusively show the movant is not entitled to relief. K.S.A. 2020 Supp. 60-1507(b); Supreme Court Rule 183(f) and (j) (2021 Kan. S. Ct. R. 239). To avoid summary denial, the movant bears the burden of establishing entitlement to an evidentiary hearing. To meet this burden, the movant's contentions must be more than conclusory, and the movant must set forth an evidentiary basis to support those contentions or the basis must be evident from the record. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014). When, as in this case, the district court decides to summarily deny a K.S.A. 60-1507 motion, our court conducts a de novo review to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to relief. 300 Kan. at 881.

3

To prevail on an ineffective assistance of counsel claim, the movant must satisfy the constitutional standards set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Thompson v. State*, 293 Kan. 704, 715, 270 P.3d 1089 (2011). Under the *Strickland* two-prong standard, the defendant must show that counsel's performance "'fell below an objective standard of reasonableness, considering all the circumstances,'" and "'there is a reasonable probability'" that, but for counsel's error, the result of the proceeding would have been different, i.e., counsel's deficient performance prejudiced the defense and deprived the defendant of a fair trial. *Thompson*, 293 Kan. at 715.

Chanthaseng claims his trial counsel's representation was deficient because he failed to question M.K.-B. about "her ability to be fair and impartial" and counsel's failure to strike M.K.-B. from the jury venire. Chanthaseng also claims, for the first time on appeal, that his trial counsel was ineffective for failing to object to some of the prosecutor's comments during voir dire. We will analyze these two arguments separately and in order. However, both of Chanthaseng's arguments are based on this colloquy between the prosecutor, the jury venire generally, and M.K.-B. in particular:

> "[PROSECUTOR]: . . . I've sort of hinted at this indirectly, but because of the subject matter of this case, here is the direct question to all of you: Have you or anyone close to you ever been the victim of any kind of sexual abuse? . . .
>
> . . . .
>
> "But for the rest of the box and the gallery, have you or anyone close to you had—had any contact with this topic, the area of sexual abuse?
>
> . . . .
>
> "[M.K.-B.]: I was molested at the age of eight, when I was little.
> "[PROSECUTOR]: Was the abuser known to you or a family member?
> "[M.K.-B.]: No. It was known to me.
> "[PROSECUTOR]: A friend?
> "[M.K.-B.]: It was a friend of a friend.
> "[PROSECUTOR]: Was it reported?

4

"[M.K.-B.]: No.

"[PROSECUTOR]: Who—how old were you first time you told anybody about this?

"[M.K.-B.]: Probably 35, but that's just a guess.

"[PROSECUTOR]: Now, all these years later, you know, I don't need to know the details of the molest. Was it a one-time thing or ongoing?

"[M.K.-B.]: No. It was a one-time thing.

"[PROSECUTOR]: All these years later, here you are in a courtroom about a case like this. What do you think? Do you think that you'd be able to set yours aside and be fair here?

"[M.K.-B.]: I really don't know.

"[PROSECUTOR]: You need to hear the facts first, don't you?

"[M.K.-B.]: Yeah.

"[PROSECUTOR]: That's a very fair statement. Does your spouse know?

"[M.K-B.]: Yes.

"[PROSECUTOR]: You know, sometimes we do these cases, and someone raises their hand for the first time in their lives, and they haven't even told their spouses.

"So, [M.K.-B.], here's the deal, you know, you may want to talk about a lot after this case is over. When you're under the admonition, you can't. You can't discuss this with your spouse or anyone. But after it's over, that is an opportunity to vent and tell everything you want to tell, but you're still under the admonition at this point. Do you get that?

"[M.K.-B.]: (Nods head up and down.)

"[PROSECUTOR]: Is there anything else about your experience that you think we should know before we proceed?

"[M.K.-B.]: My spouse knows, but my own mother doesn't know.

"[PROSECUTOR]: Okay. Do you understand the feeling of shame that a victim might have—

"[M.K.-B.]: Yes.

"[PROSECUTOR]: —in disclosing this?

"[M.K.-B.]: Yes."

*Trial Counsel's Failure to Question or Strike Prospective Juror M.K.-B.*

Chanthaseng's argument regarding his first issue on appeal consists of one brief, conclusory paragraph regarding trial counsel's alleged deficient performance:

"But, what [M.K.-B.] says is that she doesn't know whether or not her history would have an effect on her because she hasn't heard any evidence. This leaves the door open as to whether she can be fair and impartial because right then she did not have the facts to make the decision. That is a statement of being unsure. She was never asked, and never stated, that she believed she could be fair despite her past experience. But we are talking about a wom[an] who did not reveal her assault for twenty five years from the time it happened. *Any effective attorney would have followed up with the juror and questioned her ability to be fair and impartial.*" (Emphasis added.)

At the outset, Chanthaseng does not cite to *Strickland* or favor our court with an analysis of his trial counsel's ineffective assistance in accordance with that landmark precedent. Instead, Chanthaseng broadly claims that any effective attorney would have asked additional questions of M.K.-B. and questioned her about her ability to be fair and impartial. But importantly, Chanthaseng does not cite any statutory or caselaw precedent in support of his conclusory opinion about how trial counsel should have proceeded in questioning M.K.-B. about this sensitive area. Other than the opinion of appellate counsel, Chanthaseng has failed to show that trial counsel's failure to ask additional questions of M.K.-B. "fell below an *objective* standard of reasonableness, considering all the circumstances,'" (Emphasis added.) 293 Kan. at 715.

Chanthaseng's claim that his trial counsel should have struck M.K.-B. from the jury venire is also lacking merit. A review of the jury venire shows that M.K.-B.'s experience as a sexual assault victim was not unique. In all, eight potential jurors acknowledged they had been molested or had family members who were victims of molestations. Three other potential jurors stated their professional employment resulted

6

in having contact with abused and neglected children. Chanthaseng does not explain, given the large number of potential jurors with similar experiences as M.K.-B., why it was ineffective to not strike her when numerous others potential jurors had similar experiences involving molestation.

Given the composition of the jury venire, trial counsel was confronted with numerous prospective jurors with similar experiences as M.K.-B. that were deserving of consideration for challenges for cause or peremptory challenges. In fact, defense counsel successfully challenged one prospective juror for cause due to her daughter's recent experience involving a potential molestation encounter. The record shows that defense counsel was aware of the significant number of prospective jurors with either personal or professional experiences with child sexual abuse and that he took reasonable steps to protect Chanthaseng's interests during voir dire.

Kansas law provides that in reviewing claims of ineffective assistance of counsel, "courts are highly deferential in scrutinizing counsel's conduct and counsel's decisions on matters of reasonable strategy, and make every effort to eliminate the distorting effects of hindsight." *Moncla v. State*, 285 Kan. 826, Syl. ¶ 3, 176 P.3d 954 (2008). Kansas courts have found decisions such as "what jurors to accept or strike" are strategic:

> "[C]ertain decisions relating to the conduct of a criminal case are ultimately for the accused:  (1) what plea to enter; (2) whether to waive a jury trial; and (3) whether to testify. Others are ultimately for defense counsel. The decisions on what witnesses to call, whether and how to conduct cross-examination, *what jurors to accept or strike*, what trial motions should be made, and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with his or her client. [Citation omitted.]" (Emphasis added.) *Bledsoe v. State*, 283 Kan. 81, 92, 150 P.3d 868 (2007).

Our Supreme Court has also warned against "the distorting effects of hindsight" in evaluating the first prong under *Strickland*:

"'The first prong of the test for ineffective assistance of counsel requires a defendant to show that counsel's representation fell below an objective standard of reasonableness, considering all the circumstances. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. We must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' [Citation omitted.]" *Edgar v. State*, 294 Kan. 828, 838, 283 P.3d 152 (2012) (quoting *Bledsoe*, 283 Kan at 90).

Returning to the case on appeal, the colloquy between the prosecutor and M.K.-B. enlightened trial counsel that the prospective juror had been the victim of a sexual assault and the juror had been reluctant over the years to disclose that fact. The colloquy also showed that despite M.K.-B.'s sexual assault and her reluctance to disclose it to family members, the juror's answers to the prosecutor's highly personal questions in a public courtroom were responsive and by all appearances were candid and truthful. Importantly, M.K.-B. never indicated that she could not be fair to Chanthaseng despite experiencing a sexual assault, but she understood the necessity to consider the evidence at trial before making any judgment. In short, because of the prosecutor's questions, trial counsel learned significant personal information about M.K.-B.'s sexual history and apparent honesty, which was relevant to assess whether, in the best interests of Chanthaseng, the juror should be challenged.

The crux of Chanthaseng's complaint, however, is that trial counsel was ineffective for not asking M.K.-B. additional questions about her ability to be fair and impartial. Given M.K.-B.'s answers to the prosecutor's questions, the need for defense counsel to ask additional questions is not apparent. Moreover, we question the wisdom and effectiveness of defense counsel asking M.K.-B. additional questions about this sensitive subject matter. After the prosecutor's lengthy voir dire, any additional

8

questioning by defense counsel about this difficult topic risked embarrassing M.K.-B., other potential jurors with similar experiences, and had the potential to place defense counsel in a bad light before the entire jury venire.

"The purpose of the voir dire examination is to enable the parties to select competent jurors without bias, prejudice, or partiality." *State v. Zamora*, 247 Kan. 684, Syl. ¶ 2, 803 P.2d 569 (1990). This purpose was achieved in this case. Given the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and the deference afforded to trial counsel on strategic decisions such as "what jurors to accept or strike," Chanthaseng has not set forth an evidentiary basis to merit an evidentiary hearing in support of his claim. See *Sola-Morales*, 300 Kan. at 881.

Next, for the sake of completeness, we address the prejudice prong of the *Strickland* test and consider whether there is a reasonable probability that, but for counsel's purported error, the result of the proceeding would have been different, i.e., counsel's deficient performance prejudiced the defense and deprived the defendant of a fair trial. *Thompson*, 293 Kan. at 715. In Chanthaseng's motions filed with the district court he did not articulate a claim that he was prejudiced by defense counsel's deficient performance. On appeal, he does not claim or show prejudice either. As a result, Chanthaseng has not shown "'there is a reasonable probability'" that, but for counsel's error, the result of the proceeding would have been different. See 293 Kan. at 715.

In conclusion, we are convinced the district court did not err in ruling that Chanthaseng did not satisfy his burden of establishing entitlement to an evidentiary hearing on the issue of ineffective assistance of counsel. The defendant did not establish how defense counsel's conduct during voir dire fell below an objective standard of reasonableness, nor did he show how he was prejudiced by the failure to question M.K.-B. further or seek to strike her from the jury venire. In short, "the motion together with

9

the files and records of the case conclusively show that the movant is not entitled to relief." See *Moncla*, 285 Kan. 826, Syl. ¶ 1.

*Trial Counsel's Failure to Object to the Prosecutor's Voir Dire Comments*

For the first time on appeal, Chanthaseng contends his trial counsel was ineffective for failing to object to some of the prosecutor's other comments during voir dire. As included earlier in the Factual and Procedural Background section of this opinion, these comments included telling M.K.-B. and the jury venire that "this case might have an emotional impact on [M.K.-B.] and that she might need to vent *because of her prior molestation*. Additionally, Chantsatheng complains that trial counsel did not object when the prosecutor mentioned the feeling of shame that a victim of sexual assault may experience. These failures, Chanthaseng argues, violated his "constitutional right to a fair and impartial jury."

At the outset, it is well settled that constitutional grounds for reversal asserted for the first time on appeal are not properly before an appellate court for review. *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018). Still, our Supreme Court has recognized three exceptions:

> "'Despite the general rule, appellate courts may consider constitutional issues raised for the first time on appeal if the issue falls within one of three recognized exceptions: (1) The newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; or (3) the district court is right for the wrong reason.'" *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015) (quoting *State v. Dukes*, 290 Kan. 485, 488, 231 P.3d 558 [2010]).

Chanthaseng concedes he is raising this issue for the first time on appeal but asserts our court should consider his new argument because he meets the first two exceptions. We disagree.

With regard to the first exception, the prosecutor's comments may be "'proved or admitted facts,'" but his claim would not be "'determinative of the case.'" *Godfrey*, 301 Kan. at 1043. A holding in Chanthaseng's favor would result in reversal of the district court's summary denial and remand for an evidentiary hearing before the district court and for further proceedings. Thus, this is not an exceptional claim that is "'determinative of the case.'" 301 Kan. at 1043.

Regarding the second exception, Chanthaseng argues his right to an impartial jury and fair trial was violated by defense counsel failing to object to the prosecutor's questioning due to "the infection of improper statements of law and prosecutorial exploitation of a juror's unfortunate past." But Chantsethang was aware of the prosecutor's voir dire comments in 2008 because he raised the issue of prosecutorial misconduct in a related context in his direct appeal. Moreover, in September 2011, our Supreme Court addressed the issue of prosecutorial misconduct in its opinion, concluding that while some error occurred it was not reversible. *Chanthaseng*, 293 Kan. at 150. And when Chantsatheng filed his K.S.A. 60-1507 motion and amended motion in 2012, he focused on his trial counsel's ineffective assistance for failing to question or challenge M.K.-B. about her prior molestation, yet apparently ignored whether additional error occurred because his trial counsel failed to object to the prosecutor's comments about molestations. Inexplicably, Chantsatheng did not raise in 2012 the additional claim of ineffectiveness based on the prosecutor's comments regarding molestations but waited until the filing of his appellate brief in 2020 to raise this issue for the first time on appeal.

Given this procedural history wherein Chantsatheng had actual knowledge of his trial attorney's failure to object to the prosecutor's voir dire comments, yet the defendant

failed to raise the issue for 12 years, we are not convinced his newly asserted issue merits an exception to the general rule precluding appellate review.

Finally, Chanthaseng asserts the "ends of justice also need to be served because [the prosecutor] has been previously admonished by the appellate [courts] of this State for similar actions." Chanthaseng does not provide any caselaw support wherein our court found such an exception applicable under these circumstances. Chanthaseng also fails to mention that the prosecutor was admonished for conduct which occurred six years *after* Chanthaseng's trial in 2008. See *State v. Akins*, 298 Kan. 592, 315 P.3d 868 (2014). Moreover, the prosecutor's errors as found by our Supreme Court in *Akins* did not involve purportedly improper questions or comments made during voir dire. This exception does not apply.

All things considered, Chanthaseng has failed to show that we should consider this new issue as an exception to the general rule precluding review. Accordingly, we decline to review this new issue. See *State v. Gray*, 311 Kan. 164, Syl. ¶ 1, 459 P.3d 165 (2020) ("The decision to review an unpreserved claim under an exception is a prudential one. Even if an exception would support a decision to review a new claim, this court has no obligation to do so.").

Affirmed.