No. 61,345

STATE OF KANSAS, *Appellee,* v. CARL E. HOWARD, *Appellant.*

(763 P.2d 607)

Opinion filed October 28, 1988.

*Karen E. Mayberry,* assistant appellate defender, argued the cause, and *Benjamin C. Wood,* chief appellate defender, was with her on the brief for appellant.

*Debra L. Barnett,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Clark V. Owens,* district attorney, were with her on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: This is a criminal action. Carl Howard appeals his jury convictions of one count of aggravated kidnapping, K.S.A. 21-3421; two counts of rape, K.S.A. 1987 Supp. 21-3502; and six counts of aggravated criminal sodomy, K.S.A. 1987 Supp. 21-3506.

Howard was sentenced under the Habitual Criminal Act to serve a term of life for aggravated kidnapping, 20 years to life for each rape conviction, and 15 years to life for each count of aggravated criminal sodomy. The sentences for the rape convictions run concurrent with each other, but consecutive to the sentence for aggravated kidnapping. The sentences for the aggravated sodomy convictions run concurrent with each other but consecutive to the sentences for the rape convictions.

The facts out of which this case arose are sordid but must be recited in some detail because they control the issues raised. On March 5, 1987, Howard went to the home of his former girlfriend,

M, who was nine months pregnant, and told her he was leaving town. He told her she could have his furniture if she would come and get it. She indicated she would not be able to do so because of her condition. M's sister, R, overheard the conversation and offered to go get the furniture for her sister.

R went with Howard on the short walk to his apartment around 12:30. Upon entering the apartment, Howard made several telephone calls. He then told R to help him with the furniture in the bedroom. As R was packing up the stereo, she felt a sharp pain behind her right ear and fell onto the bed, where Howard beat her, bit her, and demanded she undress. When R was unclothed, Howard forced his penis into her vagina while she begged him to stop. Howard told her to shut up and rolled her on her stomach, beat her on the back of her head, and inserted his penis into her anus. He then forced his penis into her mouth. As R continued to struggle and try to escape, Howard tried unsuccessfully to tie her hands with cord and a shoestring from R's shoe. He repeatedly threatened to kill her, broke a glass behind her head, and shoved her head toward the broken pieces.

R then tried to escape by telling Howard she needed to use the bathroom. Howard grabbed her arm and accompanied her. In the bathroom, he again forced his penis into her mouth. He then leaned her over the tub and again forced his penis into her anus. He then shoved her down the hallway and against the bedroom door, where he again forced his penis into her anus. R attempted to flee down the hall but was overcome by Howard and forced to reenter the bedroom.

Howard put her on the bed and again pushed his penis into her mouth. At this point R, who was having difficulty breathing, vomited on the bed. Howard removed his penis from R's mouth and repeatedly inserted it in her vagina while attempting to insert it in her anus.

Finally, Howard stopped his physical abuse and said he should kill R, as he had nothing to lose. He said he was possessed and could read her mind. R tried to stay calm and asked if he would like her to get some tarot cards she had seen in the living room and read his future. He refused, saying she would escape. She told him she would not be able to leave without her clothes. He thought this sounded reasonable and let her leave the bedroom. R seized the opportunity, ran wildly out of the

house, and pounded on a stranger's door. A woman answered and let her in. She gave R a robe and let her call her mother and the police, who clocked the call at 3:20 p.m.

R's mother found R vomiting in the woman's bathroom and saw semen on R's neck. The police took R to the hospital, where she was found to have an abrasion to her right labia, two tears in the perirectal tissue, and swelling in the rectal area. There was a whitish liquid material in the vaginal bulb and around the rectum. R's face was swollen, she had abrasions on her hip, abdomen, and buttocks, and a bite mark on her left arm.

When the police went to Howard's apartment, he pretended he had been asleep and denied any knowledge of a rape. Pursuant to a search warrant, the police discovered R's clothing in Howard's bedroom and her tennis shoes with a shoestring removed. There was vomit on the pillowcase on the bed and broken glass on the floor. A chemical examination of the sheets revealed the presence of seminal material.

At trial, Howard testified R consented to oral sex but interrupted his attempt at vaginal intercourse to tell him she had gonorrhea. He said he became enraged at this news and beat her until she ran out the front door. He had no explanation for the vomit found on the pillow, the bite mark on R's arm, or the tears in her rectal area.

The first issue on appeal is whether the trial court erred in overruling Howard's motion to dismiss the count of aggravated kidnapping as it was merely incidental to the other charges and did not facilitate the commission of a crime.

K.S.A. 21-3421 defines aggravated kidnapping as kidnapping where bodily harm is inflicted. Kidnapping is defined by K.S.A. 21-3420 in relevant part as "the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person . . . (b) [t]o facilitate flight or the commission of any crime."

This statute was analyzed in *State v. Buggs*, 219 Kan. 203, 547 P.2d 720 (1976), where we noted our legislature had rejected the rationale of courts which construe their statutes to require substantial movement of the victim. We held: "Under our present statute it is still the fact, not the distance, of a taking (or the fact, not the time or place, of confinement) that supplies a necessary element of kidnapping." 219 Kan. at 214.

We then analyzed the specific intent requirement of K.S.A. 21-3421(b), holding:

"[T]o facilitate . . . means something more than just to make more convenient. . . .

. . . .

"[T]he . . . movement or confinement:

"(a) Must not be slight, inconsequential and merely incidental to the other crime;

"(b) Must not be of the kind inherent in the nature of the other crime; and

"(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection." 219 Kan. at 215-16.

Under this rule, we upheld a kidnapping conviction where the appellant had accosted a woman outside her store "where they were subject to public view," and forced her inside the store to rape and rob her. "That movement, slight though it was, substantially reduced the risk of detection . . . ." 219 Kan. at 216. As an example of when the rule would show movement not to be a kidnapping, the court stated: "The removal of a rape victim from room to room within a dwelling solely for the convenience and comfort of the rapist is not a kidnapping; the removal from a public place to a place of seclusion is." 219 Kan. at 216.

In *State v. Cabral*, 228 Kan. 741, 619 P.2d 1163 (1980), we set aside the appellant's conviction and sentence for kidnapping. The victim in *Cabral* had willingly gone with the appellant in his car, after which he drove to a park and raped her after locking the car doors. We held such confinement was "of a kind inherent in the nature of forcible rape and incidental to the commission of the rape." 228 Kan. at 745.

Neither of the foregoing cases pertain to facts such as we have here. Howard restrained R's activity for at least one and a half hours, possibly three hours. When R attempted to leave he restrained her. Specifically, when R attempted to flee down the hall, Howard overcame her and forced her to reenter the bedroom. Clearly Howard's actions were not slight, inconsequential, or merely incidental to the sex crimes and were not inherent in the nature of the sex crimes. Howard's conviction for aggravated kidnapping is supported by substantial competent evidence.

The second issue is whether the trial court erred in overruling Howard's motion to dismiss counts five (oral sodomy), six (anal sodomy), seven (oral sodomy), eight (rape), and nine (anal sod-

omy), as multiplicitous of counts two (anal sodomy), three (oral sodomy), and four (rape). Multiplicity exists when the State uses "a single wrongful act as the basis for multiple charges." *State v. Garnes*, 229 Kan. 368, 372, 624 P.2d 448 (1981). Charges are not multiplicitous if each charge requires proof of a fact not required in proving the other. *Garnes*, 229 Kan. at 373. Thus, charges of oral sodomy, anal sodomy, and rape are not multiplicitous with each other because a different element is required in each. Offenses are also not multiplicitous when they occur at different times and different places, because they cannot then be said to arise out of a single wrongful act. *Garnes*, 229 Kan. at 373.

The question presented in this case is how widely separated in time and place separate actions must be in order not to be considered part of a single wrongful act. In *State v. Dorsey*, 224 Kan. 152, 578 P.2d 261 (1978), the court raised a multiplicity issue sua sponte and vacated two convictions of attempted rape and one of oral sodomy. The appellant had been convicted of committing three separate acts of attempted rape and two acts of oral sodomy as well as kidnapping. The separate acts were carried out against one victim over the course of one hour. We held a lapse of only minutes between each act showed there was only one wrongful act for purposes of multiplicity analysis.

We distinguished *Dorsey* in *State v. Wood*, 235 Kan. 915, 920, 686 P.2d 128 (1984), holding the trial court did not err in refusing to merge two counts of rape. In *Wood*, the victim was disrobed and raped in her bedroom. Two or three hours later, the victim was again disrobed and raped, this time in the living room. We found the two incidents to be clearly separate.

This case is analogous to *Wood* and distinguishable from *Dorsey*. The acts took place over a time span of one and a half to three hours and were separate and distinct, occurring at different times in different locations in the house and separated from each other by other sexual acts. We find the acts committed by Howard clearly separate and thus not multiplicitous.

The third issue, whether there was sufficient evidence to support Howard's convictions of rape and aggravated criminal sodomy, is without merit. A reading of the facts of this case make it clear a rational trier of fact could well have found proof beyond a reasonable doubt that Howard committed the crimes of which

he was convicted. *State v. Pham,* 234 Kan. 649, 675 P.2d 848 (1984).

The judgment is affirmed.

HOLMES, J., concurring in part and dissenting in part:

I concur with the majority that the convictions of Howard for one count of aggravated kidnapping, one count of rape, and two counts of aggravated sodomy should be affirmed. I respectfully dissent from the affirmance of the additional convictions of one count of rape and four counts of aggravated sodomy. Here the victim was subjected to one continuous series of sexual assaults which included the separate crimes of rape, aggravated oral sodomy, and aggravated anal sodomy. The various acts of sexual intercourse and sodomy were not separated by a lapse of time as in *State v. Wood,* 235 Kan. 915, 686 P.2d 128 (1984), and in my opinion the facts of this case are not distinguishable from those in *State v. Dorsey,* 224 Kan. 152, 578 P.2d 261 (1978). I would reverse counts five, six, seven, eight, and nine as being multi-plicitous to counts two, three, and four.