Carl Eugene HOWARD, Petitioner,

v.

Michael A. NELSON, et al., Respondents.

No. 94–3263–DES.

United States District Court, D. Kansas.

Sept. 24, 1997.

Carl Eugene Howard, El Dorado, KS, pro se.

Kyle G. Smith, Kansas Bureau of Investigation, Topeka, KS, for Respondents.

## ORDER

SAFFELS, District Judge.

This matter is before the court on a petition for writ of habeas corpus, 28 U.S.C. § 2254, filed by a prisoner in the custody of the State of Kansas. Petitioner proceeds pro se and in forma pauperis in this action.

Petitioner was charged and convicted of one count of aggravated kidnaping, two counts of rape, and six counts of aggravated criminal sodomy, based upon a series of sexual assaults against one victim on March 5, 1987. He was sentenced to serve a term of life imprisonment for the aggravated kidnaping conviction, a single consecutive term of 20 years to life for both rape convictions, and a single consecutive term of 15 years to life for the six aggravated criminal sodomy convictions. In 1992, Kansas passed the Kansas Sentencing Guidelines Act ("KSGA") which set determinate sentencing ranges for offenses committed after July 1, 1993. The Act also applied retroactively to sentences imposed for certain nonviolent offenses committed prior to that date. Petitioner was found to be not eligible for retroactive application of the Act.

In his petition for habeas corpus relief, petitioner raises five grounds. Petitioner first claims he was denied due process in his conviction for aggravated kidnaping because the State failed to prove an essential element of the charge. Second, petitioner claims he was denied due process because five charges were not dismissed as multiplicitous. Petitioner next claims he was denied due process because there was insufficient evidence to support his convictions. Fourth, petitioner claims he was denied his right to effective assistance of counsel. Finally, petitioner claims the limited retroactivity of the KSGA denies him equal protection of the law. Respondents admit that petitioner has exhausted state court remedies on all five grounds.[1]

1. Petitioner filed a direct appeal in which he (1) challenged his conviction for aggravated kidnaping, (2) alleged five charges were multiplicitous, and (3) argued insufficient evidence support his convictions for rape and aggravated criminal sodomy. The Kansas Supreme Court found no error, and affirmed the convictions. *State v. Howard,* 243 Kan. 699, 763 P.2d 607 (1988).

In a collateral challenge brought under K.S.A. 60–1507, petitioner raised broad claims that he was denied the right to confront the victim through cross examination. In an amended complaint, he also claimed he was denied effective assistance of trial and appellate counsel. The district court denied both claims. On appeal, the Kansas Court of Appeals affirmed the trial court's decision, and noted that petitioner limited his appeal to the ineffective assistance of counsel claim.

In a separate later pleading, petitioner sought relief directly from the Kansas Supreme Court regarding the limited retroactive application of KSGA. That appellate court dismissed the action based upon its decision in *Chiles v. State,* 254

## FACTUAL BACKGROUND

The factual setting, as summarized by the Kansas Supreme Court, reads:

The facts out of which this case arose are sordid but must be recited in some detail because they control the issues raised. On March 5, 1987, Howard went to the home of his former girlfriend, M, who was nine months pregnant, and told her he was leaving town. He told her she could have his furniture if she would come and get it. She indicated she would not be able to do so because of her condition. M's sister, R, overheard the conversation and offered to go get the furniture for her sister.

R went with Howard on the short walk to his apartment around 12:30. Upon entering the apartment, Howard made several telephone calls. He then told R to help him with the furniture in the bedroom. As R was packing up the stereo, she felt a sharp pain behind her right ear and fell onto the bed, where Howard beat her, bit her, and demanded she undress. When R was unclothed, Howard forced his penis into her vagina while she begged him to stop. Howard told her to shut up and rolled her on her stomach, beat her on the back of her head, and inserted his penis into her anus. He then forced his penis into her mouth. As R continued to struggle and try to escape, Howard tried unsuccessfully to tie her hands with cord and a shoestring from R's shoe. He repeatedly threatened to kill her, broke a glass behind her head, and shoved her head toward the broken pieces.

R then tried to escape by telling Howard she needed to use the bathroom. Howard grabbed her arm and accompanied her. In the bathroom, he again forced his penis into her mouth. He then leaned her over the tub and again forced his penis into her anus. He then shoved her down the hallway and against the bedroom door, where he again forced his penis into her anus. R attempted to flee down the hall but was overcome by Howard and forced to reenter the bedroom.

Howard put her on the bed and again pushed his penis into her mouth. At this point R, who was having difficulty breathing, vomited on the bed. Howard removed his penis from R's mouth and repeatedly inserted it in her vagina while attempting to insert it in her anus.

Finally, Howard stopped his physical abuse and said he should kill R, as he had nothing to lose. He said he was possessed and could read her mind. R tried to stay calm and asked if he would like her to get some tarot cards she had seen in the living room and read his future. He refused, saying she would escape. She told him she would not be able to leave without her clothes. He thought this sounded reasonable and let her leave the bedroom. R seized the opportunity, ran wildly out of the *701 house, and pounded on a stranger's door. A woman answered and let her in. She gave R a robe and let her call her mother and the police, who clocked the call at 3:20 p.m.

R's mother found R vomiting in the woman's bathroom and saw semen on R's neck. The police took R to the hospital, where she was found to have an abrasion to her right labia, two tears in the perirectal tissue, and swelling in the rectal area. There was a whitish liquid material in the vaginal bulb and around the rectum. R's face was swollen, she had abrasions on her hip, abdomen, and buttocks, and a bite mark on her left arm.

When the police went to Howard's apartment, he pretended he had been asleep and denied any knowledge of a rape. Pursuant to a search warrant, the police discovered R's clothing in Howard's bedroom and her tennis shoes with a shoestring removed. There was vomit on the pillowcase on the bed and broken glass on the floor. A chemical examination of the sheets revealed the presence of seminal material.

At trial, Howard testified R consented to oral sex but interrupted his attempt at vaginal intercourse to tell him she had gonorrhea. He said he became enraged at

Kan. 888, 869 P.2d 707 (1994), in which the court found no equal protection or ex post facto violation in the limited retroactive application of KSGA.

this news and beat her until she ran out the front door. He had no explanation for the vomit found on the pillow, the bite mark on R's arm, or the tears in her rectal area.

243 Kan. 699, 700–01, 763 P.2d 607.

## DISCUSSION

### Aggravated Kidnapping

Under Kansas law, kidnapping is defined in relevant part[2] as "the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person ... [t]o facilitate ... the commission of any crime." K.S.A. 21–3420. Aggravated kidnapping is kidnapping where bodily harm is inflicted. K.S.A. 21–3421. In claiming the State failed to prove an essential element of the offense, petitioner argues there was insufficient evidence presented to the jury to support a finding that any taking of the victim was with the intent to commit a crime.

 The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 365, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). A federal court's review of the sufficiency of the evidence is limited to determining "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). All evidence must be considered in the light most favorable to the prosecution. *Id.* These standards are applied to the substantive elements of the criminal offense defined by state law. *Id.* at 324 n. 16, 99 S.Ct. at 2792 n. 16.

 Petitioner does not challenge the evidence supporting the "taking" element of the offense. The victim's testimony and corroborating physical evidence clearly establish that petitioner moved the victim from room to room, under constant restraint and threat of violence. Petitioner instead limits his challenge to the claim that the State did not prove such movement and restraint was "to facilitate ... the commission of a crime." Having reviewed the record in favor of the prosecution, this court is persuaded that sufficient competent evidence supports the state appellate court's finding.

 Where a taking or confining is alleged to have occurred for the purpose of facilitating the commission of another crime, Kansas courts employ a 3–prong test to resolve the issue:

> [I]f a taking or confining is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:
>
> (a) Must not be slight, inconsequential and merely incidental to the other crime;
>
> (b) Must not be of a kind inherent in the nature of the other crime; and
>
> (c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.

*Messer v. Roberts,* 74 F.3d 1009, 1014 (10th Cir.1996) (quoting *State v. Buggs,* 219 Kan. 203, 547 P.2d 720, 731 (1976)).

The Kansas Supreme Court compared the facts in petitioner's case to other kidnapping cases decided under Kansas law, and found the three prongs of the *Buggs* test were satisfied. The state court found (a) petitioner's actions "were not slight, inconsequential, or merely incidental to the sex crimes," (b) the victim's confinement "was not inherent in the nature of the sex crimes" involved, and (c) the facts in the case were distinguishable from exemplary dicta in *Buggs* indicating the "removal of a rape victim from room to room within a dwelling solely for the convenience and comfort of the rapist" is not kidnapping. *State v. Howard,* 243 Kan. at 702, 763 P.2d 607. The court noted that petitioner "restrained [the victim's] activity for at least one and half hours, possibly three hours. When

---

**2.** The quoted passage is the portion of the statute under which petitioner was charged. It also

reflects the state court's instruction to the jury.

[the victim] attempted to leave he restrained her. Specifically, when [the victim] attempted to flee down the hall, [petitioner] overcame her and forced her to reenter the bedroom." *Id.*

The evidence considered in the light most favorable to the prosecution supports the finding that petitioner's movement of the victim constituted kidnapping under Kansas law. Petitioner used force to restrain the victim's escape and to move her from room to room in his apartment. In addition to holding the victim by the arm, throat, and hair, petitioner bit the victim's arm and used the victim's shoelace to tie the victim's hands. Petitioner was thereby able to subject the victim to repeated vaginal, anal, and oral sexual assaults over a significant period of time. It thus appears obvious that petitioner's movement and restraint of the victim was for the purpose of further criminal sexual activity.

*Multiplicitous Counts*

█ The victim's allegations covered at least fifteen sexual assaults. Petitioner was charged with two acts of rape, and six acts of aggravated sodomy. The first rape occurred in the bedroom, followed by anal and oral sodomy. When the victim went to the bathroom, petitioner subjected the victim to oral sodomy while she was on the toilet, and anal sodomy while the victim was held over the bathtub. Then in the hallway, petitioner subjected the victim to another anal sodomy while holding the victim against the bedroom door. Back in the bedroom for a second time, petitioner committed the second rape, and additional acts of oral and anal sodomy.

Petitioner claims the charges are multiplicitous because the allegations cover a continuum of conduct with only minutes elapsing between each charged event. Petitioner does not challenge as multiplicitous the separate charges of criminal sodomy based upon instances of both oral and anal sodomy of a single victim. Rather, petitioner agues that the sex offenses should have been limited to one count of rape, one count of oral sodomy, and one count of anal sodomy. The court finds no merit to this claim where the two rapes and six sodomy offenses charged against petitioner occurred over a significant period of time, broken into separate conduct in separate rooms in the apartment.

*Sufficiency of the Evidence*

█ In reviewing for sufficiency of the evidence, both direct and circumstantial evidence is examined in the light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In the present case, the testimony of the victim, and the corroborating witness testimony and physical evidence is clearly sufficient to support petitioner's conviction on each count.

*Ineffective Assistance of Counsel*

Petitioner claims his representation was deficient because his attorney should have not agreed to suppress exculpatory evidence that the victim actually had gonorrhea. Petitioner further claims his attorney should have been more prepared in her unsuccessful attempt to introduce evidence of the victim's prior allegation of rape against another person.

Petitioner's arguments are without merit. In order for a petitioner to show that either his trial or appellate counsel was deficient he must show that counsel's conduct fell outside a wide range of reasonable professional assistance and that petitioner was prejudiced by the failures of counsel. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To establish prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. Petitioner bears the burden to establish both incompetence and prejudice, and there is a presumption that the attorney's conduct comes within "the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065. These same standards are applicable to claims of ineffective assistance of appellate counsel. *United States v. Cook,* 45 F.3d 388, 392 (10th Cir.1995).

Petitioner has made no such showing in this case. A review of the complete record in this case persuades the court that petitioner's counsel provided adequate representation. Although defense counsel agreed to withhold evidence of the victim's statement that she had gonorrhea, defense counsel retained the right to discuss the victim's statement. Thereby, the victim's possible gonorrhea was presented to the jury, as well as defendant's claim that his consensual sex with the victim stopped upon the victim's disclosure of this news.

Also, defense counsel argued at a pretrial hearing, that the evidence of the victim's report of a rape two years earlier by another person, a report which the victim never prosecuted, should be admissible during trial. The defendant and the victim both testified at that hearing, and were subjected to cross-examination. The trial court ruled the evidence was inadmissible under the Kansas Rape Shield Statute, K.S.A. 21–3525. Petitioner complains that defense counsel failed to contact the detective to whom the victim made the police report. However, the fact that a police report was made was not in dispute, and there is no claim or evidence that the detective would have testified that the victim told him that her allegation of rape was false. The court thus finds no basis for concluding that the trial court's ruling would have been altered if the detective had been contacted.

*Equal Protection and Ex Post Facto Claims*

This court has previously considered and rejected the claim that the limited retroactive application of the Kansas Sentencing Guidelines Act violates the Equal Protection or Ex Post Facto Clauses. *Jones v. Bruce,* 921 F.Supp. 708 (D.Kan.1996). For the reasons expressed in that decision, petitioner's constitutional challenge is also rejected.

## CONCLUSION

For the reasons given, the court denies petitioner's application for a writ of habeas corpus.

IT IS THEREFORE ORDERED that the petition for writ of habeas corpus is denied.