IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 112,883

STATE OF KANSAS,
*Appellee*,

v.

SAMUEL L. HARRIS,
*Appellant.*

SYLLABUS BY THE COURT

1.

The "taking or confining" element for the crime of kidnapping under K.S.A. 2018 Supp. 21-5408 is satisfied if the purpose of the taking or confining was to "facilitate" the commission of another crime. The term "facilitate" means something more than to just make the crime's commission more convenient. The taking or confining must have some significant bearing on making the other crime's commission easier.

2.

To constitute a kidnapping under K.S.A. 2018 Supp. 21-5408(a)(2) when a taking or confining is alleged to have been done to facilitate another crime's commission, the resulting taking or confinement: (a) must not be slight, inconsequential, or merely incidental to the other crime; (b) must not be of the kind inherent in the nature of the other crime; and (c) must have some significance independent of the other crime in that it makes the other crime's commission substantially easier or substantially lessens the risk of detection.

1

3.

The statutory language "to facilitate flight or the commission of any crime" in K.S.A. 2018 Supp. 21-5408(a)(2) does not create alternative means. It merely provides options within a means.

4.

The test for determining whether cumulative error requires reversal of a defendant's conviction is whether the totality of the circumstances substantially prejudiced the defendant and denied that defendant a fair trial.

5.

*State v. Hall*, 246 Kan. 728, 793 P.2d 737 (1990), does not apply to collateral attacks challenging jurisdiction based on the charging document in a criminal case so long as the charged offense is a crime under Kansas law and the defendant was adequately apprised of that alleged offense.

Review of the judgment of the Court of Appeals in an unpublished opinion filed December 16, 2016. Appeal from Lyon District Court; JEFFRY J. LARSON, judge. Opinion filed December 13, 2019. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Reid T. Nelson*, of Capital and Conflicts Appeals Office, argued the cause and was on the briefs for appellant.

*Laura L. Miser*, assistant county attorney, argued the cause, and *Amy L. Aranda*, first assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, were on the briefs for appellee.

2

The opinion of the court was delivered by

BILES, J.: Samuel L. Harris appeals from his convictions for robbery, kidnapping, and criminal threat. These crimes stemmed from a 2013 incident during which he controlled his victim for two hours, repeatedly forcing her to move from room to room within a small apartment while demanding money. Before a Court of Appeals panel, Harris claimed several trial errors and ineffective assistance of defense counsel. The panel held there were two trial errors and rejected the ineffective assistance contention. It determined the trial errors were harmless both individually and collectively. *State v. Harris*, No. 112,883, 2016 WL 7325012 (Kan. App. 2016) (unpublished opinion). Harris now challenges the panel's analysis concerning the evidence supporting his kidnapping conviction, the jury instructions, cumulative error, and his ineffective assistance issue. We affirm, although our rationale differs from the panel's reasoning on some questions.

FACTUAL AND PROCEDURAL BACKGROUND

Harris was at Victoria Lujan's apartment. He kept talking to her while she was trying to sleep, so she asked him to leave. He became frustrated by this and pushed her across the bed. She hit her head against a wall, leaving a mark under one eye. Harris panicked and said, "[O]h, my gosh, what happened to your eye? Did I do that? I'm going to go back to prison." Lujan said she would not call the police, but again asked him to leave. He refused and demanded money so he could get away. He knew Lujan typically kept $900 in cash each month for rent and living expenses.

Throughout the next two hours, Harris grabbed Lujan's arms and forcefully moved her from the bedroom to the bathroom, to the living room, and to the kitchen. She testified they went back and forth into each room at least twice. While doing so, he

3

repeatedly demanded money. He threatened to kill her dog in front of her before killing her. Eventually, she gave him roughly $700.

A jury found Harris guilty of kidnapping, robbery, criminal restraint, and criminal threat. But the district court reversed the criminal restraint conviction, holding it was incorporated within the kidnapping conviction. The court sentenced Harris to 216 months in prison.

Harris appealed, asserting multiple trial errors and ineffective assistance of defense counsel. The panel remanded the case for a *Van Cleave* hearing to consider the ineffective assistance issues. See *State v. Van Cleave*, 239 Kan. 117, ¶ 2, 716 P.2d 580 (1986) (acknowledging appellate court's authority to remand ineffective assistance of counsel challenges to the trial court for an initial determination). On remand, the district court conducted an evidentiary hearing and found Harris was not entitled to relief. Harris incorporated that adverse ruling into his appeal. The panel ultimately determined there were two trial errors, but affirmed the convictions because those errors were harmless both individually and collectively. *Harris*, 2016 WL 7325012, at *15.

Harris sought our review. Among his challenges, we have determined some are not sufficiently briefed or argued to merit substantive consideration, i.e., three of the four contentions raised at the *Van Cleave* hearing, as well as assertions against evidence admissibility and arguments about Harris' criminal history score. See *State v. Sprague*, 303 Kan. 418, 425, 362 P.3d 828 (2015) ("When a litigant fails to adequately brief an issue it is deemed abandoned."); Supreme Court Rule 8.03(b)(6)(C)(i) (2019 Kan. S. Ct. R. 53) (court will not consider issues not presented or fairly included within the petition for review).

For the remaining issues, we first address two evidence sufficiency arguments and then discuss four jury instruction challenges. And because we determine two trial errors existed from these issues, we proceed to consider the cumulative effect of those errors. Finally, we discuss the ineffective assistance of counsel argument. We affirm the convictions.

SUFFICIENCY OF THE EVIDENCE

Harris argues there is insufficient evidence to sustain his kidnapping conviction. First, he asserts the evidence fails to show he took or confined Lujan. Second, he insists the evidence fails to establish his intent to facilitate flight.

*Additional facts*

Lujan testified her one-bedroom apartment was arranged in an open rectangle. All agree Harris forcefully moved her to different rooms, first taking her from the bedroom, where the incident began, to the bathroom. There, Lujan said, Harris was "firm . . . adamant about getting the money." He held a body pillow as if he might suffocate her. He said, "I'm not playing. Victoria, you need to give me your money and I need to get away. I'm not playing." She was too scared to try to break free.

Next, he took her back to the bedroom. Harris sat on the bed and said, "'Lord, please forgive me for this murder I'm about to commit.'" This terrified Lujan even more. She was nude and asked to get dressed, but Harris refused. He told her "'if you get dressed, then you can run out the door and you're not going to run outside naked.'" He also took her cell phone.

5

After this, Harris moved Lujan into the living room, where he sat on a love seat and made her sit on the floor in front of him. She offered sex to distract him, but he refused. While in the living room, he threatened to kill her dog in front of her and then to kill her. He then took her into the kitchen, where he demanded she help him untangle several extension cords so he could tie her up. They failed at this, so he gave up and took her back to the living room where he again made her sit on the floor. He said, "'I'm not playing . . . . I have a gun on the back side of me. I've killed three people before, it's not going to be a problem to kill you.'" At that point, he punched her in the jaw with a closed fist.

After being hit, Lujan retrieved her money. She gave Harris $70 to $90 at first, but he demanded more. They went back to the bedroom and got her remaining cash. Harris then took her from the bedroom back to the living room where he made her sit on the sofa. He put two pillows over her ears while he called a friend, David Deck, to ask for a ride. She could hear Harris saying, "I need to get out of town."

After that, Harris smoked a cigarette near the front door, which he opened because the smoke bothered Lujan. He made her stand next to him. He said again he was going to "hog tie" her with an extension cord and kill her. Lujan tried, but failed, to get through the door.

She then ran to the wall of an adjoining apartment and banged on it while yelling out to her neighbor. Harris knew Lujan had a system for alerting the neighbor if Lujan needed help, so he ran away. The neighbor testified she heard muffled voices and yelling coming from Lujan's apartment. The neighbor called 911 when Lujan banged on the wall. Lujan came to the neighbor's apartment naked and crying hysterically.

Deck testified he went to an area near Lujan's apartment after receiving the call from Harris, who was agitated when Deck arrived. The pair went to Deck's house. When Deck left to buy beer, Harris gave him a $20 bill and Deck saw that Harris had a large amount of cash.

Although the State charged Harris with aggravated kidnapping, the jury found him guilty of the lesser included offense of kidnapping. The jury instructions listed the alleged kidnapping's three elements as: (1) Harris took or confined Lujan by force or threat; (2) he took or confined her "to facilitate flight or the commission of any crime"; and (3) the "act occurred on or about the 3rd day of May, 2013, in Lyon County, Kansas." Harris challenges the sufficiency of the evidence admitted to support those first two elements.

*Standard of review*

When a criminal defendant challenges the sufficiency of the evidence used to support a conviction, an appellate court looks at all the evidence "in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Rizal*, 310 Kan. 199, 209, 445 P.3d 734 (2019). A reviewing court "generally will 'not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.'" *State v. Gonzalez*, 307 Kan. 575, 586, 412 P.3d 968 (2018).

1. *Kidnapping's taking or confinement element*

K.S.A. 2018 Supp. 21-5408(a) specifies that the crime of kidnapping can be accomplished "by force, threat or deception" with the specific intent to achieve certain objectives. K.S.A. 2018 Supp. 21-5408(a) ("[1] For ransom, or as a shield or hostage; [2] to facilitate flight or the commission of any crime; [3] to inflict bodily injury or to

7

terrorize the victim or another; or [4] to interfere with the performance of any governmental or political function."); *State v. Buggs*, 219 Kan. 203, 214, 547 P.2d 720 (1976). In Harris' case, we are focused on the second alleged statutory objective, i.e., "to facilitate flight or the commission of any crime." See K.S.A. 2018 Supp. 21-5408(a)(2).

The trial court's instructions advised the jury it had to find Harris "took or confined" Lujan "by force or threat" and did so "to facilitate flight or the commission of any crime." Harris disputes whether he had the required specific intent to achieve the proscribed objective.

The term "facilitate" means "something more than just to make more convenient." 219 Kan. at 215. The *Buggs* court discussed what is needed for a taking or confining to sustain a kidnapping conviction:

> "[I]f a taking or confining is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:
>
> > "(*a*) Must not be slight, inconsequential and merely incidental to the other crime;
>
> > "(*b*) Must not be of the kind inherent in the nature of the other crime; and
>
> > "(*c*) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection." 219 Kan. at 216.

The *Buggs* court also clarified the possible circumstances:

> "For example: A standstill robbery on the street is not a kidnapping; the forced removal of the victim to a dark alley for robbery is. The removal of a rape victim from room to room within a dwelling solely for the convenience and comfort of the rapist is

not a kidnapping; the removal from a public place to a place of seclusion is. The forced direction of a store clerk to cross the store to open a cash register is not a kidnapping; locking him in a cooler to facilitate escape is. The list is not meant to be exhaustive, and may be subject to some qualification when actual cases arise; it nevertheless is illustrative of our holding." 219 Kan. at 216.

Our question is whether repeatedly forcing Lujan from room to room within the one-bedroom apartment constitutes a taking or confinement within the statute's meaning under *Buggs*. Harris argues that because the incident occurred within the apartment's compact living space, only "short movements" purely incidental to the robbery were involved.

We have no hesitation agreeing the evidence is sufficient in this regard. The panel correctly concluded Harris' movements of Lujan—however "short"—were not slight, inconsequential, or merely incidental to the robbery. *Harris*, 2016 WL 7325012, at *5. The statute specifies no particular distance to constitute kidnapping.

In *State v. Howard*, 243 Kan. 699, 702, 763 P.2d 607 (1988), for example, the court held that restraining a kidnapping victim's movement within a dwelling for nearly three hours was not slight or merely incidental to the underlying sex crimes. Similarly, Harris grabbed Lujan's arms and forcefully restrained her while moving her around into each room for more than two hours while demanding her money. As in *Howard*, Harris' many acts of controlling Lujan's mobility over this extended period should not be considered slight, inconsequential, or merely incidental to the robbery.

The panel also correctly held Harris' movements were not inherent in robbery. The statute defines robbery as "knowingly taking property from the person or presence of another by force or by threat of bodily harm to any person." K.S.A. 2018 Supp. 21-5420(a). Its plain language shows controlling someone's movements over an extended

9

period is not inherent in the crime. See *State v. Richmond*, 258 Kan. 449, 453, 904 P.2d 974 (1995) ("The moving of the robbery victim from room to room is not inherent in the crime of robbery."); see also *State v. Jackson*, 238 Kan. 793, 803, 714 P.2d 1368 (1986) (defendant's actions in shoving victim out of structure and trying to force victim into car not "of the kind inherent in the nature of attempted first-degree murder").

Harris nevertheless contends holding Lujan for two hours was "all part of one larger continuous effort to have [her] give up her money." But his challenge has no substantive basis. He mainly relies on *State v. Hays*, 256 Kan. 48, 883 P.2d 1093 (1994), in which four men entered the victim's house and one held the victim against a wall while the others stole a computer and other items. The court reversed the kidnapping conviction because the victim was not moved and the confinement was incidental to and part of the nature of the aggravated robbery under those facts. 256 Kan. at 63. But *Hays* is distinguishable because it did not involve the extended duration and repetitive room-to-room forced movements present in Harris' case.

In addition, Harris refused to let Lujan get dressed because he thought keeping her naked inhibited her desire to escape. He told her "'if you get dressed, then you can run out the door and you're not going to run outside naked.'" He also continued controlling and restraining Lujan's movements even after she handed over her money. He even kept her at the opened front door to prevent her escape while he smoked.

These facts demonstrate the third *Buggs* element, significance independent of the robbery, because they show the movements made the robbery substantially easier to commit or substantially lessened the risk of detection. *Buggs*, 219 Kan. at 216. And finally, these facts support the rather obvious conclusion that Harris' conduct facilitated his flight from the crime scene of the robbery because he arranged his getaway as the final events unfolded.

10

Viewed in the light most favorable to the State, there was sufficient evidence that Harris' acts throughout the robbery satisfy the statutory requirements as interpreted by *Buggs*.

2. *The alternative means contention*

The pertinent part of the jury instruction read: "The defendant did so take or confine . . . Lujan *to facilitate flight or the commission of any crime*." (Emphasis added.) Harris argued to the panel that the evidence could not support a finding of guilt on each of what he asserted were alternative means for committing kidnapping, i.e., facilitating flight or commission of any crime. More specifically, he asserted the evidence was lacking to show he held Lujan with intent to facilitate flight. The panel correctly rejected this contention as a matter of law.

In *State v. Haberlein*, 296 Kan. 195, 207-09, 290 P.3d 640 (2012), the court determined the statutory language "to facilitate flight or the commission of any crime" did not create alternative means but merely provides "options within a means." Harris asks us to reconsider *Haberlein*, but fails to advance any substantive argument for doing so. This makes it unnecessary to perform any additional alternative means analysis. *Haberlein* controls.

JURY INSTRUCTIONS

For the first time on appeal, Harris asserted several jury instruction defects that he believes require reversal, both individually and collectively. He claimed the trial court erred when it: (1) failed to instruct on criminal restraint as a lesser included offense of kidnapping; (2) did not specify the underlying crime, i.e., robbery, in the kidnapping

11

instruction; (3) failed to give a unanimity instruction for the kidnapping count; and (4) failed to provide a unanimity instruction for the robbery count. We affirm.

*Standard of review*

When reviewing a jury instruction issue, an appellate court follows a well-known four-step analysis, whose progression and corresponding standards of review are: (1) the court considers the issue's reviewability from both jurisdiction and preservation viewpoints, employing an unlimited standard of review; (2) the court determines whether the instruction was legally appropriate, using an unlimited review; (3) it determines whether sufficient evidence existed, when viewed in the light most favorable to the requesting party, to support the instruction; and (4) if the court finds error, it then must decide whether the error was harmless, using the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011). *Gonzalez*, 307 Kan. 596-97.

The first step affects the last one because an unpreserved issue will be considered for clear error, i.e., the error may be considered harmless unless the party claiming it can convince the court the jury would have reached a different verdict without the error. K.S.A. 2018 Supp. 22-3414(3) ("No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict . . . unless the instruction or the failure to give an instruction is clearly erroneous."); *State v. Gentry*, 310 Kan. 715, 720-21, 449 P.3d 429, 435 (2019). Since Harris' instruction challenges are raised for the first time on appeal, our standard for reversibility is clear error.

*1.  Failure to instruct on criminal restraint as a lesser included offense*

Harris claims the trial court committed reversible error by failing to instruct on criminal restraint as a lesser included offense of kidnapping, rather than as an alternative crime. He argues this prevented the jury from making a proper decision between the two charges. The State seemingly conceded the error on appeal by stating "the better practice may have been to instruct the jury on criminal restraint as a lesser included offense as opposed to an alternative charge to aggravated kidnapping and kidnapping." The panel agreed error existed. *Harris*, 2016 WL 7325012, at *9 (quoting *State v. Simmons*, 282 Kan. 728, 742, 148 P.3d 525 [2006] ["'[K]idnapping and criminal restraint are lesser included offenses of aggravated kidnapping.'"]). But the panel also concluded the error was harmless under a clear error analysis. 2016 WL 7325012, at *10 (relying on *State v. Winters*, 276 Kan. 34, 72 P.3d 564 [2003]). On review, we are asked whether this harmless error conclusion is correct.

The trial court instructed on criminal restraint as an alternative charge to kidnapping, but not as a lesser included offense of kidnapping. The kidnapping instruction provided:

> "To establish the charge of kidnapping, each of the following claims must be proved:

> "1. The defendant took or confined . . . Lujan by force or threat.

> "2. The defendant did so take or confine . . . Lujan to facilitate flight or the commission of any crime.

> "3. This act occurred on or about the 3rd day of May, 2013, in Lyon County, Kansas."

13

The criminal restraint instruction stated:

"The defendant is charged in Alternative Count 3 with Criminal Restraint. . . .

"To establish this charge, each of the following claims must be proved:

"1. The defendant knowingly and without legal authority restrained . . . Lujan so as to interfere substantially with her liberty; and

"2. This act occurred on or about the 3rd day of May, 2013, in Lyon County, Kansas."

In addition to these instructions, the district court instructed the jury that

"Each crime charged against the defendant is a separate and distinct offense. You must decide each charge separately on the evidence and law applicable to it, uninfluenced by your decision as to any other charges. The defendant may be convicted or acquitted on any or all of the offenses charged."

During deliberations, the jury asked the trial court: "'Does criminal restraint require a separate verdict from kidnapping? Is it a lesser charge or its own charge?'" The court, without objection from Harris, answered: "Please complete all verdict forms, including Alternative Count 3, criminal restraint." The jury went back to its deliberations and returned guilty verdicts on both the kidnapping and criminal restraint charges. The court reversed the criminal restraint conviction, holding it was incorporated within the kidnapping conviction as the two convictions were multiplicitous. The parties agreed.

As argued in his petition for review, Harris appears to misunderstand the panel's holding because he erroneously contends the panel failed to "determine the legal issue of

14

whether a lesser included offense of [c]riminal [r]estraint should have been provided to the jury." And he suggests the panel did not find error because the panel reasoned "the trial court acted correctly in reversing a conviction of criminal restraint." But Harris' view of the panel's ruling is wrong. The panel explicitly stated there was error after determining a lesser included instruction was factually and legally appropriate. *Harris*, 2016 WL 7325012, at *10 (holding the trial court "erred when it gave criminal restraint as an alternative to Count 3 instead of as a lesser included offense").

On review, the issue for us is whether that error was harmless under a clear error standard, i.e., the error may be considered harmless unless the party claiming the error can convince the appellate court the jury would have reached a different verdict without the error. *Gentry*, 310 Kan. at 720-21, 449 P.3d at 435; see *State v. Rosa*, 304 Kan. 429, 437, 371 P.3d 915 (2016) (holding that when the State did not cross-petition from the Court of Appeals' finding of error, the only issue on review was whether the error was harmless). And as to that, Harris offers only a conclusory claim that the erroneous instruction precluded the jury from making a proper decision. He asserts that since "the jury *may have chosen* unlawful restraint under the facts of this case, the kidnapping conviction should be reversed." (Emphasis added.) This argument appears premised on the notion that the jury would have picked the criminal restraint charge over kidnapping if given the chance.

When the jury returned guilty verdicts on both kidnapping and criminal restraint, the district court took the appropriate corrective action by vacating the lesser offense and sentencing Harris only for the kidnapping. See *State v. Hernandez*, 294 Kan. 200, 205, 273 P.3d 774 (2012) (noting when "one charge is a lesser included offense of the other, it was error to instruct on these charges as if they were alternative crimes. . . . When a defendant is convicted of multiplicitous offenses, the court must vacate the lesser sentence and impose sentence only on the greater offense."). But nothing in the record

15

supports Harris' claim that the jury would not have returned the same guilty verdict on the kidnapping charge if the criminal restraint was submitted to the jury as a lesser included offense. And a jury is presumed to follow the instructions given to it. *State v. Reid*, 286 Kan. 494, 521, 186 P.3d 713 (2008).

The district court's instruction to consider each crime separately fatally weakens Harris' attempt to establish clear error. See *State v. Winters*, 276 Kan. 34, 40-42, 72 P.3d 564 (2003) (holding asserted error in order of presenting included offenses to jury was not clear error when jury was instructed to consider the crimes separately and distinctly, because instruction ensured verdict on one crime would not affect verdict on another). And we have already determined the evidence against Harris was sufficient to support his kidnapping conviction.

It is unnecessary to find the evidence was overwhelming or conclusive to meet the clear error standard of review. In other words, Harris' argument does not firmly convince us the jury would have reached a different verdict without the error.

### 2. *Failure to identify the underlying offense*

Harris next argues the trial court erred by failing to instruct the jury on the specific underlying offense supporting the kidnapping. The instruction stated only that Harris took or confined "Lujan to facilitate flight or the commission of *any crime*." (Emphasis added.) The panel agreed this was error, but concluded it was harmless. *Harris*, 2016 WL 7325012, at *11. The State did not cross-petition for review, so our focus is again on reversibility. See *Rosa*, 304 Kan. at 437.

Harris argues our analysis should be based on the harmless error test articulated in *Neder v. United States*, 527 U.S. 1, 17, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (holding

16

error is harmless if the omitted element was uncontested and supported by overwhelming evidence). But *Neder* does not apply under our state's caselaw. See *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012) (citing *Ward*, 292 Kan. 541, ¶ 6).

Notably, the panel did not use the appropriate standard of review, and the parties did not advance the proper one in briefing. See *Harris*, 2016 WL 7325012, at *11 (stating clear error applies but stating "[t]here is no reasonable possibility this error changed the result of the trial"). We will address harmless error using the proper, clear error standard. See K.S.A. 2018 Supp. 21-3414(3); *Gentry*, 310 Kan. at 720-21, 449 P.3d at 435 (appellate court will not disturb the conviction unless it is firmly convinced the jury would have reached a different verdict had the error not occurred).

The trial record yields no question that robbery was the underlying crime facilitated by the kidnapping. And the jury instruction accurately stated the kidnapping was committed to facilitate the robbery. Harris therefore fails to convince us the verdict would have been different without the error. We hold the omission was not clearly erroneous.

### 3. Failure to give a unanimity instruction for the kidnapping count

Harris contends the evidence showed separate and distinct acts of restraint during the commission of the crime. He argues the State did not elect which restraint constituted the kidnapping and also notes the trial court provided no unanimity instruction. The panel held Harris' criminal acts constituted one unitary conduct because (1) the acts of confining Lujan took place over a few continuous hours; (2) they occurred at the same location, Lujan's apartment; (3) no intervening event emerged between the acts; and (4) no fresh impulse motivated any of the acts. *Harris*, 2016 WL 7325012, at *6.

17

When a defendant challenges a district court's failure to give a unanimity instruction in a case involving multiple acts, a reviewing court uses a particularized three-step test:

"The threshold question . . . , over which the court exercise[s] unlimited review, [is] whether the case truly involve[s] multiple acts, *i.e.*, whether the defendant's actions could have given rise to multiple counts of the charged crime or whether the alleged conduct was unitary. . . .

"'The second step [is] a determination of whether an error occurred. If the State did not inform the jury which act to rely upon during its deliberations and the trial court did not instruct the jury that it must be unanimous about the particular criminal act that supported the conviction, there was error. . . .

"'The final step [is] to determine whether the error was reversible.' [Citations omitted.]" S*tate v. King*, 297 Kan. 955, 979, 305 P.3d 641 (2013).

Under the first step, an appellate court determines whether the conduct was unitary—that is, whether the conduct was either part of one act or multiple acts separate and distinct from one another. Four factors are considered for that: (1) whether the acts occurred at or near the same time; (2) whether the acts occurred at the same location; (3) whether an intervening event occurred between the acts; and (4) whether a fresh impulse motivated some acts. *King*, 297 Kan. at 980-81. Harris focuses on fresh impulse.

Harris identifies four acts he asserts were factually separate and distinct from one another: (1) "He held [Lujan] because he did not want to go to prison after pushing her at the beginning"; (2) "[h]e held her asking for her money"; (3) "[h]e held her so she could not go and escape"; and (4) "[h]e held her because he was thinking of tying her up in the kitchen." But this attempts to parse the incident too finely. What happened that evening

18

cannot be factually separated into distinct criminal acts as Harris would have us do. These were all part of one unitary conduct—confining Lujan in her apartment for nearly two hours while taking her money. Once Harris began the incident, no break occurred—it continued until he left with his friend. This made giving a unanimity instruction inappropriate.

In *State v. Kesselring*, 279 Kan. 671, 683, 112 P.3d 175 (2005), the court held a kidnapping was a continuous incident that could not be factually separated even though the incident happened over several hours, the victim was moved from one location to another, and the victim was momentarily free when he tried to escape. The court held, "If the State had charged Kesselring with separate counts of kidnapping based on each act that Kesselring attempts to separate, the issue of multiplicity could have been justly raised." 279 Kan. at 683. The same rationale applies to Harris.

We hold the panel correctly decided this issue.

4. *Failure to give a unanimity instruction for the robbery count*

As for the aggravated robbery, the charging instrument specifically alleged Harris took "property, to-wit:  US currency" from Lujan. But when she testified, Lujan said Harris took both her cell phone and money. The district court's jury instruction stated only that, "To establish the charge of robbery . . . [the State must prove Harris] *knowingly took property* from . . . Lujan." (Emphasis added.) And in its closing argument, the prosecutor said:  "I don't think there's any question the State's established that Mr. Harris took monies from Ms. Lujan." The jury found him guilty of the lesser included offense of robbery instead of aggravated robbery as originally charged.

19

On appeal, Harris argued to the panel there were two acts that could separately constitute the alleged robbery: the taking of the cell phone and the taking of the money. Neither the State nor the panel disagreed. *Harris*, 2016 WL 7325012, at *7. But after holding the charge involved multiple acts based on the evidence, the panel held no error occurred because the State explicitly referenced the taking of Lujan's money in its closing as the basis of the robbery charge—not the cell phone. *Harris*, 2016 WL 7325012, at *8; see also *King*, 297 Kan. at 982 (a unanimity instruction was necessary unless the State elected the particular criminal act on which it relied, either explicitly or functionally).

Now before this court, Harris concedes the State's election, but he still complains the jury instruction lacked the necessary specification. The problem is that he fails to cite any relevant authority for why this deficiency matters when our caselaw consistently acknowledges no multiple-acts error occurs when the State tells the jury which particular act it must rely on in its deliberation. See *State v. Trujillo*, 296 Kan. 625, Syl. ¶ 1, 294 P.3d 281 (2013). And since the State did that, we affirm the panel's holding.

CUMULATIVE ERROR

Harris next argues the cumulative effect of the two jury instruction errors requires the kidnapping conviction's reversal. Considered collectively, cumulative error may be so great it requires reversing a defendant's conviction. The test for that is whether the totality of the circumstances substantially prejudiced the defendant and denied that defendant a fair trial. *State v. Hart*, 297 Kan. 494, 513-14, 301 P.3d 1279 (2013). When deciding if cumulative errors are harmless, an appellate court assesses the errors in context with the entire record, considering how the trial judge dealt with the errors as they arose; the nature and number of errors and their interrelationship, if any; and the evidence's overall strength. *State v. Miller*, 308 Kan. 1119, 1176, 427 P.3d 907 (2018).

20

We agree with the panel that the cumulative effect of instructing on criminal restraint as an alternative crime rather than a lesser included offense, and omitting the specific crime the kidnapping was meant to facilitate, does not require reversal. Viewing the errors against the entire record, they did not so prejudice Harris as to deny him a fair trial. The trial court appropriately dealt with the first by reversing the criminal restraint conviction. As to the second, it was obvious at trial what the underlying crime was for the kidnapping instruction and there was ample evidence to support it.

Any cumulative effect was insignificant when weighed against the strength of the State's evidence.

## INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

Harris argues the panel erred by applying the wrong law to his ineffective assistance of counsel claim. His contention is that defense counsel, Frederick Meier, failed to timely file a motion for arrest of judgment on the kidnapping conviction with the district court. See K.S.A. 2018 Supp. 22-3502 (stating that a motion for arrest of judgment must be filed within 14 days after the conviction, and the district court "shall arrest judgment if the complaint, information or indictment does not charge a crime or if the court was without jurisdiction of the crime charged").

In Harris' view, the State's complaint was defective because it did not identify the underlying crime for the alleged aggravated kidnapping. Harris argues that if Meier had timely filed a motion to arrest judgment, the district court would have been forced to apply a stricter standard of compliance against the State when reviewing the charging document's sufficiency. This, he continues, would have resulted in dismissal of the lesser included offense of kidnapping, which was the crime the jury convicted him of.

21

*Additional facts*

The amended charging document stated:

"That on or about the 3rd day of May, 2013, in Lyon County, Kansas, Samuel Lee Anthony Harris, then and there being present did unlawfully and feloniously take or confine a person, to wit: Victoria Gomez Lujan, accomplished by force, threat or deception and with the intent to hold said person to inflict bodily injury or to terrorize the victim or another; or to facilitate flight or *the commission of any crime* and with bodily harm being inflicted on Victoria Gomez Lujan." (Emphasis added.)

At the time of Harris' conviction (August 2014) and his *Van Cleave* hearing (April 2016), courts reviewed charging document sufficiency under the framework set out in *State v. Hall*, 246 Kan. 728, 793 P.2d 737 (1990), *overruled by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (July 2016). *Hall* established two different standards of review depending on when the defendant first raised the issue.

A stricter rule—known as the "pre-*Hall* standard"—applied when an issue was raised in the district court before, during, or within 14 days after trial. Harris relies on this pre-*Hall* standard because it provided that a complaint omitting an essential element of the charged crime was "jurisdictionally and fatally defective" resulting in reversal of a conviction of that offense. 246 Kan. at 747. But a more liberal rule—the "post-*Hall* standard"—applied when the question was newly raised on appeal. 246 Kan. at 764-65. Under this post-*Hall* standard, also called the "common-sense rule," appellate courts examined the information as a whole and interpreted the charging document to include facts necessarily implied. 246 Kan. at 764-65. In other words, charging instruments challenged later in the process were construed to favor validity. 246 Kan. at 762.

22

On remand from the panel, the *Van Cleave* court agreed Meier's failure to file the motion fell below an objective standard of reasonableness. This deprived Harris of the opportunity to force the court to "critically consider" the charging document's sufficiency according to the *Van Cleave* court. But moving to prejudice, the court applied the post-*Hall* common-sense rule to conclude no prejudice occurred.

The *Van Cleave* court found: (1) Meier correctly understood the State was relying on robbery as the underlying offense for the aggravated kidnapping and prepared a defense accordingly after reviewing the State's discovery and the preliminary hearing transcript; (2) Harris failed to show any impairment to his ability to plead this conviction in a later prosecution, noting there was little evidence of any other crimes on which the State could be basing its claims; and (3) Harris failed to claim his fair trial rights were compromised by the complaint's wording. It also noted, as dicta, that the complaint was sufficient, even under pre-*Hall*, because the complaint's language closely followed the statutory language in K.S.A. 2018 Supp. 21-5408 ("to facilitate flight or the commission of any crime . . . ."). This was an apparent reference to K.S.A. 22-3201(b) ("The complaint, information or indictment shall be a plain and concise written statement of the essential facts constituting the crime charged, which complaint, information or indictment, *drawn in the language of the statute, shall be deemed sufficient*." [Emphasis added.]).

On appeal to the panel, Harris shifted his argument. He claimed the *Van Cleave* court should have used the two-prong test from *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), for ineffective assistance of counsel claims. More specifically, Harris focused on *Strickland*'s second prong, i.e., whether there is a reasonable probability the result of the proceeding would have been different without the deficient performance. He asserted that using the pre-*Hall* standard would necessarily mean there was no jurisdiction over the aggravated kidnapping charge, so the district

23

court would have had no choice but to arrest the judgment and dismiss his conviction of the lesser included offense of kidnapping.

The panel held the *Van Cleave* court's factual findings were supported by substantial competent evidence. It then applied *Dunn*, 304 Kan. 773, which overruled *Hall*, on the prejudice prong. It noted *Dunn* identified three types of charging document defects—none of which prevents or destroys subject matter jurisdiction as a matter of law. The panel determined the appropriate harmlessness analysis was under K.S.A. 2015 Supp. 60-261 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."). *Harris*, 2016 WL 7325012, at *17.

The panel reasoned that "[a]s a general rule, a decision overruling precedent is applied to all similar cases pending as of the date of the overruling decision." 2016 WL 7325012, at *16 (citing *State v. Nguyen*, 281 Kan. 702, 715, 133 P.3d 1259 [2006]). And based on that, the panel held that even though the *Van Cleave* court used the post-*Hall* test, it reached the correct result and affirmed. 2016 WL 7325012, at *18 (citing *State v. Overman*, 301 Kan. 704, 712, 348 P.3d 516 [2015] [affirming district court as right for wrong reasons]).

*Standard of review*

The panel correctly described the standard of review for assessing the district court's *Van Cleave* ruling, noting:

> "A claim alleging ineffective assistance of counsel presents mixed questions of fact and law. Appellate courts review the *Van Cleave* court's factual findings to determine whether the findings are support[ed] by substantial competent evidence and support the court's legal conclusions; appellate courts apply a de novo standard to the district court's

24

conclusions of law. *State v. Cheatham*, 296 Kan. 417, 430, 292 P.3d 318 (2013)." *Harris*, 2016 WL 7325012, at *15.

*Discussion*

To understand the tactical significance to Harris' argument, recall that when addressing a claim of ineffective assistance of counsel, a court employs *Strickland*'s two-prong test, under which the court first determines if counsel's performance was deficient under the totality of the circumstances, and then considers whether there is a reasonable probability the result of the proceeding would have been different without the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882-83, 335 P.3d 1162 (2014); *Chamberlain v. State*, 236 Kan. 650, Syl. ¶¶ 3-4, 694 P.2d 468 (1985) (adopting *Strickland* in Kansas cases). Harris asserts that counsel's failure to challenge the charging document necessarily resulted in prejudice because, if he had timely done so the pre-*Hall* standard would have applied, and the district court would have had no choice but to arrest the judgment for lack of jurisdiction.

But Harris' argument fails to account for our decision in *Ferguson v. State*, 276 Kan. 428, 444, 78 P.3d 40 (2003), that recognized *Hall*'s bifurcated review standard can create an absurd situation depending on how the argument was framed. This is because when a defendant challenged a charging document's insufficiency for the first time on appeal, the post-*Hall* standard applied. But if the defendant altered the argument to be an ineffective-assistance-of-counsel claim in the same situation, the court would be forced under *Strickland* to hold the alleged deficient performance was prejudicial when failing to move to arrest judgment if there was any defect under the pre-*Hall* standard. *Ferguson*, 276 Kan. at 430. The *Ferguson* court resolved this anomaly by applying the common-sense rule to analyzing the prejudicial effect of trial counsel's failure to move to vacate in a collateral attack based on ineffective assistance of counsel. 276 Kan. at 444; see also

25

*Swenson v. State*, 284 Kan. 931, Syl. ¶ 4, 169 P.3d 298 (2007) (common-sense rule is used to analyze the prejudice prong in the test for ineffective assistance of counsel related to failure to file a motion to dismiss or vacate the judgment when alleging a defective complaint).

In his petition for review, Harris claims the panel erred by applying *Dunn*. And to that extent we agree because the issue for appellate review is not the charging document's sufficiency but whether his opportunity for a hearing was squandered under what would have been the pre-*Hall* standard. We also note *Dunn* did not revisit or overrule *Ferguson*'s modified prejudice prong analysis. This means *Ferguson* remains the correct analytical framework in Harris' case.

The Sixth Amendment to the United States Constitution recognizes an accused's right to the assistance of counsel because it envisions counsel playing a role critical to the adversarial system's ability to produce just outcomes. The accused is entitled to be assisted by counsel who plays the role necessary to ensure the trial is fair. *Strickland*, 466 U.S. at 685. The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, *a trial whose result is reliable*." (Emphasis added.) 466 U.S. at 687.

Meier testified at the *Van Cleave* hearing that he was not confused about the offense charged nor about the State's theory on the aggravated kidnapping. He said he clearly understood aggravated robbery or robbery was the aggravated kidnapping's underlying offense. He also stated he could adequately prepare a defense to the charge, which was a general denial. He testified he would not have done anything differently had the complaint contained the words "aggravated robbery" as opposed to "any crime."

26

Following *Ferguson*, our caselaw dictates the common-sense rule applies to determine whether Harris suffered prejudice on his ineffective assistance of counsel claim. And with that, the record shows he suffered no prejudice. Harris was not deprived of a fair trial.

Affirmed.

PATRICK D. MCANANY, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:**  Senior Judge McAnany was appointed to hear case No. 112,883 under the authority vested in the Supreme Court by K.S.A. 20-2616 to fill the vacancy on the court by the retirement of Justice Lee A. Johnson.