NOT DESIGNATED FOR PUBLICATION

No. 125,803

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RICHARD A. PETTY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Submitted without oral arguments. Opinion filed April 5, 2024. Affirmed.

*Shannon S. Crane*, of Hutchinson, for appellant.

*Andrew R. Davidson*, assistant district attorney, *Thomas R. Stanton*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, P.J., ATCHESON and BRUNS, JJ.

PER CURIAM: Richard Andrew Petty appeals after a jury convicted him of two misdemeanor counts of violating a protection from stalking order. On appeal, Petty contends that the district court erred in failing to provide a unanimity jury instruction. Because he did not request a unanimity instruction at trial, we review the record on appeal to determine whether the district court's failure to give the instruction was clearly erroneous. Based on our review of the record, we are not firmly convinced that the jury would have returned a different verdict if the unanimity instruction had been given. Thus, we affirm.

1

In January 2019, the district court entered two protection from stalking orders against Petty. Under the terms of the orders, Petty was prohibited from following, harassing, abusing, molesting, assaulting, threatening, stalking, or interfering with the privacy rights of Deena Bernard and her husband, Kymon Bernard, or their families or household members. In addition, the orders prohibited Petty from communicating in any manner with the Bernards.

On the afternoon of April 24, 2019, Petty and several other people were walking across the street from a home owned by Deena Bernard. Because Petty had previously been in a relationship with Deena, he knew that this was her house. At the time, Kymon Bernard was working in the yard. Petty began shouting obscenities at him. Moreover, Deena—who was inside the house—saw Petty through a window. Although Kymon attempted to record the incident on his cell phone, he was only able to obtain a few photographs.

Ultimately, Petty and Kymon called 911 to report the incident while it was occurring. It appears that the 911 call from Petty was placed around 4:39 p.m. and lasted approximately 8 minutes until the police arrived at the scene. When the police arrived, they spoke with the parties. After doing so, they placed Petty under arrest. While the police were placing Petty into the patrol vehicle, he yelled a slur at Kymon. According to the record, the police left the scene by 6 p.m.

Subsequently, the State charged Petty with three counts of felony stalking in violation of K.S.A. 21-5427(a)(3), (b)(3)(A) and two counts of misdemeanor violation of a protection from stalking order in violation of K.S.A. 21-5924(a)(6), (b)(1). On January 11, 2022, the district court commenced a two-day jury trial. During the trial, the State presented the testimony of six witnesses and offered six exhibits that were admitted into

evidence. Although Petty called no witnesses to testify in his defense, he offered four exhibits that were admitted into evidence. The parties agreed that Petty had been the first to call the police during the incident, and they stipulated to the admission of the 911 recording into evidence.

Kymon testified about the events that occurred on the afternoon of April 24, 2019. Significant to this appeal, Kymon testified that he was working in the front yard of Deena's house when a group of people walking across the street caught his attention because they were taunting him. He recognized Petty, but he did not know the other individuals. Kymon testified that he pulled out his phone and attempted to record the group because he had "a protection order against [Petty]" and he "wanted evidence to prove [Petty] was in my vicinity."

Kymon also testified that Petty was then "screaming obscenities" at him and this made him nervous. Even though Kymon was unable to capture any video recording of the incident, he managed to take some photos of Petty that were admitted into evidence. Kymon further testified that he called 911 during the incident. When the police arrived, they interviewed Kymon and Petty. Ultimately, the police arrested Petty. According to Kymon, Petty yelled a slur at him as he was being placed into the police vehicle.

Deena testified that she was cleaning inside her house when Kymon came inside and told her to "stay put" because Petty was nearby. Deena also testified that she saw Petty through a window, and she was "terrified . . . [b]ecause he's been told not to come around and he keeps coming around." According to Deena, Petty was familiar with the location of her home and the car she drove because he had visited her home multiple times during their prior relationship.

Sergeant Curtis Black with the Hutchinson Police Department testified that he and Officer Enrique Rodriguez were dispatched to Deena's home to investigate the incident.

When Sergeant Black arrived at the scene, Officer Rodriguez was talking with Petty and three juveniles. Sergeant Black testified that he spoke with both Kymon and Petty about the events that took place that afternoon. Upon completion of his investigation, Sergeant Black assisted Officer Rodriquez in arresting Petty.

After considering the evidence, the jury acquitted Petty of the three felony stalking charges which are not at issue in this appeal. However, the jury convicted Petty of the two misdemeanor charges of violation of a protection from stalking order arising out of the events on the afternoon of April 24, 2019.

On February 11, 2022, the district court sentenced Petty to concurrent sentences of six months in jail for each misdemeanor count. Nevertheless, the district court suspended the sentences and placed Petty on probation for a period of 12 months. After this appeal was filed, Petty successfully completed his probation.

ANALYSIS

The sole issue presented on appeal is whether the district court erred in not giving a unanimity instruction. Even though Petty candidly admits that he did not ask the district court to give a unanimity instruction, he argues that one should have been given because there were several different acts that the jury could have viewed as violations of the protection from stalking orders. In response, the State contends that Petty's actions on the afternoon in question were all part of the same continuous conduct. Additionally, the State argues that even if the district court had given a unanimity instruction, there is no real possibility the jury would have returned a different verdict due to the overwhelming evidence of Petty's guilt presented at trial.

When a party asserts an instruction error for the first time on appeal, the failure to give a legally and factually appropriate instruction is reversible only if the failure was

clearly erroneous. *State v. Butler*, 307 Kan. 831, 845, 416 P.3d 116 (2018). When a case involves multiple acts, the jury must unanimously agree on which specific act constitutes the crime. K.S.A. 22-3421; *State v. King*, 297 Kan. 955, 977, 305 P.3d 641 (2013). To ensure a unanimous verdict in such cases, the district court must give the jury a unanimity instruction, or the State must elect the particular act it relies on for the conviction. 297 Kan. at 978.

The Kansas Supreme Court has defined "'multiple acts'" as "legally and factually separate incidents that independently satisfy the elements of the charged offense." *State v. De La Torre*, 300 Kan. 591, 598, 331 P.3d 815 (2014). Our Supreme Court has defined unitary conduct as actions forming "part of a single continuous course of conduct." *King*, 297 Kan. at 980. Four factors guide this analysis: (1) whether the acts occurred at or near the same time; (2) whether the acts occurred at the same location; (3) whether an intervening event occurred between the acts; and (4) whether a fresh impulse motivated some acts. *State v. Harris*, 310 Kan. 1026, 1039, 453 P.3d 1172 (2019).

Material to the issue presented in this appeal, the State charged Petty with two misdemeanor counts of violation of a protection from stalking order. One of the charges related to a violation of Kymon's protective order and the other related to a violation of Deena's protective order. A review of the record reveals that the district court appropriately instructed the jury that it was to consider each of these charges separately, that the State had the burden to prove beyond a reasonable doubt that Petty committed the crimes knowingly, and that its verdict must be unanimous.

Petty argues that the State presented evidence of three factually separate acts committed on the afternoon of April 24, 2019, that could have been the basis for the jury's determination that he violated the protection from stalking orders. These acts include: (1) Petty yelling at Kymon from across the street; (2) Petty walking near Deena's home; and (3) Petty yelling a slur at Kymon as he was being placed into the

5

police car. We pause to note that the first two acts occurred very close in time—if not simultaneously—while the third occurred about an hour later after the police interviewed the parties.

"When the factual circumstances of a crime involve a short, continuous, single incident comprised of several acts individually sufficient for conviction, jury unanimity requires only that the jury agree to an act of the crime charged, not which particular act." *State v. Staggs*, 27 Kan. App. 2d 865, Syl. ¶ 2, 9 P.3d 601 (2000). A review of the record reflects that the first two acts cited by Petty involved a continuous incident occurring over a short period of time. Consequently, only the third act cited by Petty—which was only directed toward Kymon—could potentially be considered a separate and distinct act.

Even if we assume—without deciding—that Petty yelling an additional slur at Kymon as he was being placed into the police vehicle was an intervening event creating a fresh impulse, we do not find the district court's failure to give a unanimity instruction to be reversible based on our review of the record on appeal. When—as in the present case—a defendant did not request an instruction, we must determine whether the district court's failure to give it was clearly erroneous. See K.S.A. 22-3414(3); *De La Torre*, 300 Kan. at 596. Accordingly, in order to establish that the district court's failure to give a unanimity instruction in this case was clearly erroneous, Petty must firmly convince us that the jury would have returned a different verdict if the unanimity instruction had been given. See *King*, 297 Kan. at 979-80.

A review of the record on appeal reveals overwhelming evidence that Petty knowingly violated the protection from stalking orders. Moreover, Petty's defense at trial was that he did not knowingly violate the protective orders based on his version of the events versus Kymon's and Deena's versions of the events. Notwithstanding, the State presented evidence that Petty knew that he was walking across the street from Deena's home where her vehicle was parked in the driveway and that he saw Kymon in the front

6

yard. Likewise, the State presented evidence that Petty yelled at Kymon. The jury considered this evidence—among other things—in determining that Petty knowingly violated the protection from stalking orders on the afternoon of April 24, 2019.

In light of the overwhelming evidence in the record on appeal in support of the jury's determination that Petty committed misdemeanor violations of the two protection from stalking orders, we are not firmly convinced that the result of the trial would have been different had a unanimity instruction been given by the district court. We, therefore, conclude that the district court did not commit clear error by failing to give a unanimity instruction, and we affirm Petty's convictions.

Affirmed.